IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA PANKIW, | ) | CASE NO. 1:04 CV 2334 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | **MEMORANDUM OPINION &** |
| Defendant. | ) | **ORDER** |

## I.  Introduction

By referral from the District Judge,[1] now before the Court for final disposition are plaintiff Sandra Pankiw's (Pankiw) motion to compel discovery from defendant Federal Insurance Company (Federal)[2] and Federal's motion for a protective order to preclude discovery[3] of certain parts of Federal's records.  Pankiw has filed a brief in opposition to Federal's motion[4] to which Federal has filed a reply.[5]  Pankiw has subsequently filed a

---

[1] ECF # 44.

[2] ECF # 32.

[3] ECF # 35.  Federal initially sought a protective order as ECF # 34 but terminated that motion and filed ECF # 35 as an amended motion for a protective order.  Though both filings are part of the referral from the District Judge, only the amended motion, ECF # 35, is properly awaiting disposition.

[4] ECF # 38.

[5] ECF # 39.

sur-reply brief[6] to which Federal has filed a response.[7] Federal has also filed the documents at issue here with the Court under seal for *in camera* inspection.[8]

The underlying case involves a claim by Pankiw for Federal to pay a death benefit to her upon the death of her son. The present dispute arises from Pankiw's attempt to have Federal disclose the complete records of its review of that insurance claim.

Federal asserts that it withheld the records because they are protected by attorney-client privilege, the attorney work product doctrine, and because they are irrelevant and not calculated to lead to the discovery of admissible evidence.[9] Pankiw contends that Federal is, pursuant to ERISA,[10] the plan administrator of the life insurance plan here, with a fiduciary duty to beneficiaries such as Pankiw and, thus, without the benefit of attorney-client and work product privileges.[11]

---

[6] ECF # 42.

[7] ECF # 43.

[8] ECF ## 36, 37.

[9] ECF # 35 at 2. Federal's multi-page memorandum in support is not paginated. The page references herein are as determined by the Court's electronic filing system.

[10] The Employee Retirement Income Security Act. 29 U.S.C. § 1001 *et seq.*

[11] ECF # 38 at 3.

## II.  Facts

**A.**     **Underlying claim**

The life insurance policy that forms the basis for Pankiw's claim was obtained by her

as part of her employment with PolyOne Corporation. As noted by the District Judge in the

Order granting Federal partial summary judgment in this case:

> In 2002 [subsequent to Geon being re-named PolyOne], certain
> PolyOne employees could select accidental death and dismemberment
> insurance coverage for themselves and their dependents.  Ms. Pankiw
> elected to obtain such coverage for herself and her son Alexander Pankiw.
> Ms. Pankiw agreed to pay $4.62 bi-weekly for the cost of this coverage.  The
> AD&D Policy benefit was offered and administered under the "Geon
> Accidental Death and Dismemberment Plan."   PolyOne was the named
> policyholder of the AD&D Policy and the sponsor of the Geon Accidental
> Death & Dismemberment Plan.
>
> In PolyOne's Form 5500 Summary Annual Report for 2002, which is
> filed with the Internal Revenue Service in accordance with ERISA
> requirements, PolyOne provided information regarding the Geon Accidental
> Death & Dismemberment Plan and the AD&D Policy.  PolyOne's Form 5500
> filing, together with the AD&D Policy and the Summary Plan description,
> provide clear and detailed information regarding: (1) the intended accidental
> death benefits; (2) the class of beneficiaries; (3) the source of financing; and
> (4) the procedures for receiving accidental death benefits.  FIC (Federal) is
> identified in these documents as the insurance carrier for the Geon Accidental
> Death & Dismemberment Plan.
>
> On 2 November 2002, Ms. Pankiw's fifteen year old son, Alexander
> Pankiw, died in an automobile crash caused by his "negligent operation of the
> vehicle."  Ms. Pankiw sought to recover benefits under the AD&D Policy for
> the death of her son, and FIC (Federal) denied Ms. Pankiw's claim.[12]

The District Judge then concluded that since the uncontroverted evidence established

that "PolyOne subsidized 'certain benefits' offered under PolyOne Flex Benefits" and had

_____

[12] *Id.* at 5-6.

"'endorsed' the AD&D Policy by, among other things, naming itself the policyholder and taking on numerous other administrative tasks far beyond conferring payment to FIC (Federal) ... ([such as] informing [employees] that 'PolyOne will contact your beneficiaries' regarding benefits in the event of the employee's death, and referring employees to the PolyOne Service Center to obtain forms), ... [there was] no doubt that PolyOne maintained the plan with the intent of providing benefits to its employees."[13]

Similarly, Federal now points to the portions of the Summary Plan Description, provided as an exhibit in support of the motion for a protective order,  which identify Geon Company as the "Plan Administrator" and Federal as the "Insurer," with "the Chubb Group of Insurance Companies" identified as the "Claims Administrator and Payor."[14]  Additional sections of this exhibit describe how if the "Claims Administrator" denies a claim under "Life, Accident and Business Travel Insurance," an appeal can be taken to "The Geon Company c/o Director of Compensation and Benefits."[15]

**B.     The current motion**

Federal has sought a protective order to preclude production of documents sought by Pankiw, which have been categorized as follows in Federal's amended motion for a protective order:

---

[13] *Id*. at 8 (internal citations omitted).

[14] ECF # 40, Ex. A at 3.

[15] *Id.* at 5.  The exhibit also shows a partial handwritten interlineation of the address where appeals should be mailed whereby "The Geon Company, One Geon Center" was replaced with "PolyOne Corporation, 33587 Walker Rd."

| | |
|---|---|
| Category # 1 | The entire file of Dennis Kearns (the "Kearns File") who was in-house coverage counsel for Federal, dealing with his legal evaluation and opinion of Plaintiff's claim for accidental death and dismemberment benefits (Plaintiff's Claim"), which is the claim being asserted in the instant case. |
| Category # 2 | Documents  consisting of correspondence between Dennis Kearns and other Federal employees regarding his legal opinion and legal advice concerning Plaintiff's Claim. |
| Category # 3 | Documents prepared by Federal employees regarding communications with Dennis Kearns regarding his legal opinion of and legal advice concerning Plaintiff's Claim. |
| Category # 4 | Documents prepared by Federal employees regarding the setting of reserves on Plaintiff's Claim.[16] |

Federal asserts that documents in Category 1 are "opinion work product and [ ] entitled to absolute protection;"[17] that the documents in Category 2 are "protected from disclosure by the attorney-client privilege;"[18] that the documents in Category 3 are also "protected from disclosure by the attorney-client privilege;"[19] and that the documents in Category 4 are "not relevant and [ ] not reasonably calculated to lead to the discovery of admissible [evidence]."[20]

---

[16] ECF # 35-2 at 1-2.  Federal's motion does not contain enumerated pages.  The pages cited here are as determined by the Court's electronic filing system.

[17] *Id.* at 5.

[18] *Id.* at 8.

[19] *Id.*

[20] *Id.* at 10.

-5-

Pankiw asserts first that "Federal has no right to invoke the attorney-client privilege to prevent disclosure of the documents at issue [because] Federal is an ERISA plan administrator...."[21]  Further, Pankiw maintains that Federal's status as an ERISA fiduciary also prevents it from invoking the work product privilege,[22] which, moreover, does not apply to material prepared in the ordinary course of business and not in anticipation of litigation.[23] Finally, as regards the Category 4 documents, Pankiw contends that "ERISA law mandates their disclosure."[24]

Federal denies that it is an ERISA fiduciary here and argues its right to invoke the various privileges without reference to any duties of an ERISA fiduciary.[25]

The Magistrate Judge has reviewed the motions and responses here, as well as the documents submitted under seal, and will now proceed to analyze the issues presented pursuant to the applicable law.

### III.  Analysis

Federal's claims to invoke the various privileges against disclosure rely in the first instance on it not being a fiduciary for purposes of ERISA.  Accordingly, the Magistrate

---

[21] ECF # 38 at 3.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] ECF # 39 at 7.  "The fiduciary exception does not apply because Federal was not acting in the capacity of an ERISA fiduciary when it handled Plaintiff's Claim."

Judge will first consider the applicable law concerning the definition of a fiduciary under ERISA and its application here, and then address any privileges to disclosure that may be applicable.

## A.      Applicable law – ERISA fiduciary

As defined in the ERISA statute:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.[26]

The Sixth Circuit has recently re-affirmed the test for determining fiduciary status under the terms of the statute.  In *Briscoe v. Fine*, the court stated:

> This court employs a functional test to determine fiduciary status.  *See Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001) (observing that "[t]he Supreme Court has recognized that ERISA 'defines "fiduciary" not in terms of formal trusteeship, but in functional terms of control and authority over the plan ...'") (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)).  In addition, several courts have focused on the phrase "to the extent" in holding that "[f]iduciary status ... is not an all or nothing concept," and that they must therefore "ask whether a person is a fiduciary with respect to the particular activity in question."  *Moench v. Robertson*, 62 F.3d 553, 561 (3rd Cir. 1995) (citations and quotation marks omitted); *see also Hamilton*, 243 F.3d at 998 (explaining "the need to examine the conduct at issue when determining whether an individual is an ERISA fiduciary"); *Am. Fed'n of Unions Local 102 v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 662 (5th Cir. 1998) ("A person is a fiduciary only with respect

---

[26] 29 U.S.C. § 1002(21)(A).

to those portions of a plan over which he exercises discretionary authority or control.").[27]

*Briscoe* holds further that:

Whether a person or entity qualifies as a fiduciary is either a question of law or a mixed question of law and fact ... *See Hamilton*, 243 F.3d at 997 (explaining that fiduciary status is a pure question of law where the parties do not challenge the district court's underlying factual findings).[28]

Applying those rules to a situation similar to the present case, *Briscoe* held that when an insurer does not have complete, final authority over the payment of claims, but there is the right of appeal to the sponsoring company from the insurer's initial denial of benefits, the insurer is not an ERISA fiduciary:

[In *Libbey-Owens-Ford*,[29]] the court limited its holding to the situation in which "an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims...."[30]  In that case, BCBSM maintained complete control over the claims decisions, including appeals from the denial of benefits.[31]
The Seventh Circuit in *Klosterman v. Western General Management, Inc.*,[32] emphasized BCBSM's role as the final authority in claims decisions when it refused to extend the holding of *Libbey-Owens-Ford* to a case (like here) in which the sponsoring company was the ultimate decision maker.  This reasoning also distinguishes the second precedent on which the plaintiffs rely,

---

[27] *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006).

[28] *Id.*

[29] *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio (BCBSM)*, 982 F.2d 1031 (6th Cir. 1993).

[30] *Id.* at 1035.

[31] *Id.*

[32] *Klosterman v. Western Gen. Mgmt.*, 32 F.3d 1119, 1125 (7th Cir. 1994).

-8-

*Hill v. Blue Cross & Blue Shield of Michigan*,[33] where this court simply applied *Libbey-Owens-Ford* at the motion-to-dismiss stage and allowed a claim against the insurance company to proceed because the plaintiff had alleged that Blue Cross had full authority to deny claims.[34]

**B.**     **Federal is not an ERISA fiduciary**

Here, Federal claims to be simply a claims processor, while any fiduciary authority over the plan, including the right to hear and decide appeals from a denial of coverage, remained with Pankiw's employer.[35]

Pankiw, in response, citing to the rule in *Libbey-Owens-Ford*, as restated in *Hill*, maintains that "Federal is an 'insurance company' that 'administers claims for an employee welfare benefit plan and has the authority to grant or deny claims.' Therefore, Federal is plainly a fiduciary."[36]

Initially, in evaluating this issue, the Magistrate Judge notes that there is no dispute as to the facts now in the record as to the terms of the insurance policy at issue here, nor as to the language of the applicable employee benefit plan, including a stated right to appeal the denial of a claim to the sponsoring company and evidence that this right was communicated to plan holders, including Pankiw.

---

[33] *Hill v. Blue Cross & Blue Shield of Michigan*, 409 F.3d 710, 716-17 (6th Cir. 2005).

[34] *Briscoe*, 444 F.3d at 489, internal citations omitted.

[35] ECF # 39 at 7. "[I]t is clear that Federal is the *claims* administrator, a role distinct from the *plan* administrator, Geon.  They are not one and the same, because the decision of the *claims* administrator, Federal, is appealed to and reviewed by the *plan* administrator, Geon, predecessor to PolyOne."

[36] ECF # 42.

Furthermore, it must be noted that Pankiw has not attempted to present any supplemental facts so as to establish some non-contractual behavior on the part of Federal, different from the procedure established in the documents, that would form the basis for a determination of fiduciary status.

Accordingly, the question of whether Federal is an ERISA fiduciary for the purpose of paying or denying insurance claims filed pursuant to the insurance provided by Pankiw's employee benefit plan is properly subject to a resolution as a matter of law based on the undisputed facts in the record.[37]

In that regard, Pankiw's reliance on the rule of *Libbey-Owens-Ford* for the proposition that Federal must necessarily be an ERISA fiduciary because it "has authority to grant or deny claims" is an incorrect application of that rule to the facts here.

*Libbey-Owens-Ford* does not hold that the mere act of **initially** paying or denying claims under an ERISA-sponsored insurance policy, of itself, makes the party performing that function an ERISA fiduciary.  As the Sixth Circuit explained in *Briscoe,* the key test under the overall functional test for determining who is a fiduciary in these circumstance pivots on finding who  "was the ultimate decisionmaker"[38] as to the payment of claims.

Here, Federal has established in the plan documents that it was Geon who had the authority to make the ultimate decision to pay or deny a claim under the accidental death and

---

[37] *See*, *Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001).

[38] *Briscoe*, 444 F.3d at 489.

dismemberment policy, and that persons wishing to dispute a denial of benefits under that policy were directed to file an appeal with "The Geon Company c/o Director of Compensation and Benefits."[39]  As noted, Pankiw has not contested the authenticity of these documents, nor otherwise challenged the accuracy of the procedure they describe for handling denied claims by a final appeal to Geon.

Accordingly, absent any other evidence that Federal took any other action to hold itself out as a fiduciary, and in view of the clear record evidence that it was Pankiw's employer, not Federal, that "retained the final authority to determine whether a claim should be paid, and was the entity to which dissatisfied employees were instructed to direct their appeal of a claim denial,"[40] the Court concludes that Federal is not an ERISA fiduciary for purposes of final decisions as to paying or denying insurance claims.

## C.    Applicable law – the asserted privileges

### 1.    *Attorney-client privilege*

Encouraging frank communication between an attorney and client, and thereby promoting the broader public interest in the administration of justice, is the root of the attorney-client privilege.[41]  The privilege is "the oldest of the privileges for confidential

---

[39] ECF # 40, Ex. A at 4-5.  *See also* at 17.  "If your claim is denied in full or in part, you or your beneficiary is entitled to a full review.  For more information, refer to page 4...."

[40] *Briscoe*, 444 F.3d at 489, citing *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir.1991).

[41] *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

communication known to the common law."[42]  The privilege provides "certainty to litigants that information relayed to one's attorney will not be disclosed...."[43]  This purpose is served equally whether a corporation or an individual is asserting the privilege.[44]  The burden of establishing the existence of the attorney-client privilege is on the party asserting the privilege.[45]  The question of whether the privilege applies is a mixed question of law and fact.[46]

Claims of attorney-client privilege are "narrowly construed because [the privilege] reduces the amount of information discoverable in the course of a lawsuit."[47]  The privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice."[48]

---

[42] *Upjohn,* 449 U.S. at 389.

[43] *In re Columbia/HCA Healthcare Billing Practices*, 293 F.3d 289, 304 (6th Cir. 2002).

[44] *Ross*, 423 F.3d at 600, citing *Commodity Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 348 (1985).

[45] *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 2000).

[46] *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998).

[47] *Ross,* 423 F.3d at 600, quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) (citing *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)).

[48] *Id.*, quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

2.    *Attorney work product privilege*

The work product doctrine "is distinct from and broader than the attorney-client privilege."[49]  The doctrine is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] client's interests.[50]

"Fact" work product is considered to be "the written or oral information transmitted to the attorney and recorded as conveyed by the client."[51]  Such work product may be obtained during discovery upon a showing of substantial need and inability to otherwise obtain the information without a material hardship.[52]  However, absent a waiver or allegations that fraud or criminal conduct is involved, a party may not obtain the "opinion" work product of the other side; *i.e.*, "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories."[53]

---

[49] *In re Columbia/HCA Healthcare,* 293 F.3d at 294, quoting *In re Antitrust Grand Jury*, 805 F.2d at 163 (quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975)).

[50] *Id.*, quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

[51] *In re Antitrust Grand Jury,* 805 F.2d at 163.

[52] *In re Columbia/HCA Healthcare,* 293 F.3d at 294, citing *Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988).

[53] *Id.*, quoting *In re Antitrust Grand Jury*, 805 F.2d at 163-64 (citations omitted).

In essence, the work product doctrine is held, subject to the above-noted exceptions, to be applicable to "all written materials obtained or prepared by an adversary's counsel with an eye toward litigation...."[54]

**D.      Application to the present case**

Pankiw has explicitly chosen not to directly contest Federal's arguments as to how either the attorney-client privilege or the work product doctrine would apply here in the absence of a finding that Federal is an ERISA fiduciary.[55]  Inasmuch as Federal is not an ERISA fiduciary, the entirety of Pankiw's response concerning the application of these privileges, which response rests entirely on the assumption that Federal is an ERISA fiduciary, is not applicable to the analysis that must now be done.

The Magistrate Judge will, therefore, consider the relevant law of these two privileges as it applies to the particular documents now the subject of Federal's motion for a protective order.

---

[54] *Hickman*, 329 U.S. at 511.

[55] *See*, ECF # 38 at 3 n.4.  "Federal's motion for a protective order relies solely on the general law of attorney-client and work product privileges.  It is notably devoid of any case law that addresses these privileges in the context of a beneficiary's claim against a plan fiduciary."

## 1.    Category # 1

Category # 1 documents, which comprise the file of Dennis Kearns, the attorney for Federal,[56] are described by Federal in its brief in support of the present motion as containing "all the documents, legal research, handwritten notes and confidential communication which form the basis for the legal opinion and advice that Mr. Kearns rendered to Federal.  The Kearns File reflects Mr. Kearns' legal theories and thought processes in selecting specific relevant documents and case authority which form the basis of his legal opinions and advice – this is clearly work product...."[57]

Upon review, the Magistrate Judge concludes that the Kearns File is as it has been represented and contains statutory and case authority; internal correspondence between Kearns and Federal employees; handwritten notes; drafts and copies of written correspondence and/or emails to and from Kearns with the claimant's counsel, the company, and state agencies; as well as documents relating to the claim for benefits here at issue.

Accordingly, the Magistrate Judge concludes that this file in its entirety is privileged under both the attorney-client privilege and the work product doctrine. This is  particularly so as to all forms of communications between Kearns and Federal employees, which is

---

[56]  The Kearns File consists of the entire file of Dennis Kearns, the in-house coverage counsel for Federal, and was Bates-numbered K035-K225 for use in the Log of Privileged Documents Withheld or Redacted that was provided to Pankiw in response to Pankiw's First Request for Production.  The designation of Category # 1 was applied to this file by Federal in its present Amended Motion for a Protective Order.

[57]  ECF # 35-2 at 5.

subject to the attorney-client privilege, and also as to all forms of "opinion" work product which covers any form in which Kearns engaged in determining his opinions and theories of this claim. It is true as well for all materials relevant to the claim collected by Kearns in his capacity as counsel to Federal that Pankiw has not attempted to show are necessary to her and cannot be otherwise obtained without "material hardship."

**2.     Category # 2**

Documents in what has been designated by Federal as Category # 2,[58] consist of correspondence between in-house counsel Dennis Kearns and Federal employees whereby the employees solicit and Kearns provides his opinion as to the legal status of the Pankiw claim.

These documents center on what is labeled a "Coverage Memorandum," written by Kearns and sent to an Assistant Vice President of Federal, wherein Kearns sets forth to his client his views as to the legal basis for the Pankiw claim. That memo and a copy are part of the Category # 2 documents. The category file also contains a request for Kearns to review a letter from Pankiw's counsel disputing Federal's legal position on the claim.[59]

———————————————

[58] The documents here are marked in the Privilege Log as Bates pages C024-C027, C037-C039 and C060-C063. There are two distinct documents and a copy of one of those documents in this category. As Federal notes in its amended motion, ECF # 35-2 at 7, n.6, reading each document requires beginning at the highest number Bates page and proceeding to the lowest.

[59] The material in the sealed file does not include pages C038 and C039 which are referenced as being included. The immediately preceding document, C037, is the fax letter to Kearns asking for his review of an attached letter from Pankiw's counsel. It thus appears that the two pages that follow in direct sequence were simply inadvertently omitted and

As noted, the communication of a client to an attorney concerning matters that are in dispute are at the heart of the attorney-client privilege.  Moreover, documents such as the "Coverage Memo," which are an attorney's judgment as to the matter at issue and are intended for use by the client, are also protected by the attorney-client privilege.  Insofar as this memo also references legal case authority to support the attorney's arguments and conclusions, it is also work product that is protected.

Accordingly, the Magistrate Judge finds that the documents in Category # 2 are protected from discovery by both the attorney-client and work product privileges as noted.

**3.     *Category # 3***

The five documents in Category # 3[60] are various notes by Federal employees wherein they either refer matters to Kearns for his legal advice or make note that they have taken that action.[61]  Redacted versions of the larger notes, wherein the specific references to seeking advice from counsel have been eliminated, are also included with the submission.

Federal seeks protection from discovery on the grounds that these items are protected from disclosure by the attorney-client privilege.[62]  Pankiw does not directly address the

---

would logically contain the letter from Pankiw's counsel referenced in C037.

[60] Bates # C020 (computer file note by a claims supervisor regarding referral to Kearns); C021-22 ("Counsel Coverage Referral Form"); C022 (note concerning referral to attorney); C023 (note from claims supervisor regarding referral to Kearns); C032-33 (computer note indicating a referral of correspondence to counsel).

[61] *See* ECF # 35-2 at 8.

[62] *Id.* at 2, n.3.

asserted privilege with respect to these documents apart from denying its applicability to an ERISA fiduciary.[63]

In all these notes, there is a request by a member of the client company for legal advice concerning a contested or potentially contested claim, along with the factual context for the inquiry.  As such, they involve, in these particular respects, the communication between a client and a lawyer that is protected from discovery by the attorney-client privilege.

However, insofar as these notes merely document the normal claims processing activity of the insurer, they would appear to be relevant and discoverable in an action arising out of a coverage dispute.  Moreover, Federal here does not assert any privilege in respect of these documents under the work product doctrine.  It is only the particular portions relating to seeking the advice of counsel, which have been redacted by Federal in the alterative versions, that are claimed by Federal to be subject to the privilege.

Upon review, the Magistrate Judge concurs with Federal's redaction of these documents and finds that the redacted documents are discoverable by Pankiw.

### 4.    *Category # 4*

The documents in Category # 4[64] contain information as to the amount of reserves that were set aside to potentially pay the Pankiw claim. Federal asserts that the amount of

---

[63] ECF # 38 at 3-5.

[64] Bates numbers C011-C012 and C018.

the reserve "has absolutely no bearing [on] the legal determination of coverage."[65]  Pankiw argues that even if, as Federal's case authority claims, that reserve information is only "tenuously relevant," any kind of relevance should weigh in favor of disclosure since "Federal cannot articulate how it would be unfairly prejudiced by the disclosure of the information."[66]

In *American Protection Insurance Company v. Helm Concentrates, Inc.*,[67] a case cited by both sides here, the court noted that discovery and/or admissibility of insurance reserves must be analyzed in the first instance as to whether the case involves direct "first party" coverage for a claim or is one where the insurer owes a duty to defend or is, therefore, a "third party" policy.[68]

While evidence of whether the insurer established any reserve in third party cases may be relevant to the issue of good faith on the part of the insurer,[69] no comparable relevance exists where "the policy either provides coverage for the loss or it does not...."[70]  Any

---

[65] ECF # 35-2 at 10.

[66] ECF # 38 at 7.

[67] *American Prot. Ins. Co. v. Helm Concentrates, Inc.*, 140 F.R.D. 448 (E.D. Cal. 1991).

[68] *Id.* at 449.

[69] *Id.* at 450.

[70] *Id.*

potential reserve is only "marginally relevant at best" to that issue.[71]  The *Helm* court noted

that the plaintiff there was seeking discovery of evidence of reserves in such a first party

insurance case, as is the case here with Pankiw:

> points to no case involving a first party claim where reserve information is
> discoverable or admissible, nor does it provide a cogent argument why such
> information would be admissible or probative at trial.[72]

Pankiw nowhere makes a distinction between third party, duty to defend cases where

discovery of reserves has a logical relationship to the issue of whether the insurer has acted

in good faith to defend a claim, and cases, like this one, where there is no connection

between any reserve and the essential issue of whether the claim is covered.

Indeed, Pankiw pleads that it should be entitled to even tenuously relevant discovery

here on the basis that information as when and how the reserves were set may produce

evidence "as to the manner in which Federal administered Pankiw's claim."[73]  That question

of "the manner in which Federal administered Pankiw's claim," while potentially relevant

to the insurer's good faith duty to defend in third party cases, is precisely not at issue where

the question here is whether the claim is covered or not.[74]

---

[71] *Id.*

[72] *Id.*

[73] ECF #38 at 8.

[74] *American Prot.*, 140 F.R.D. at 450.  *See also*, *Leski Inc. v. Federal Insurance Co.*,
129 F.R.D. 99, 106 (D.N.J. 1989) ("The purpose of discovery – expedition of litigation by
avoiding unnecessary testimony or by providing a lead to evidence – will not be served by
allowing discovery of reserves.").

Accordingly, the Magistrate Judge finds that the documents concerning the reserve established by Federal referenced in the documents in Category # 4 are properly subject to the proposed protective order.

## Conclusion

Therefore, for the reasons stated, Federal's amended motion for a protective order concerning the specific documents cited in the motion is hereby granted, and Pankiw's motion to compel concerning the same documents is denied.  Federal is to produce the redacted documents in Category # 3 and is entitled to withhold from production all other documents that were the subject of this motion.


Dated:  May 31, 2006                          s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

-21-