IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

SANDRA PANKIW,

          Plaintiff,

  -vs-

FEDERAL INSURANCE COMPANY,

          Defendant.

---

: CASE NO. 1:04 CV 2334

: ORDER & OPINION GRANTING
: DEFENDANT'S MOTION FOR
: JUDGMENT ON THE
: ADMINISTRATIVE RECORD

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    The plaintiff Sandra Pankiw and the defendant Federal Insurance Company ("Federal Insurance"), insurer of the accidental death plan of Ms Pankiw's employer PolyOne, each filed motions for summary judgment or, in the alternative, judgment on the administrative record pursuant to Wilkins v. Baptist Healthcare System, Inc, 150 F.3d 609 (6th Cir. 1998). (Docket Nos. 49, 51). Ms Pankiw seeks review of the administrative record regarding the denial of her claim for accidental death benefits upon the death of her fifteen year old son, a covered dependent under the accidental death plan.

    On 11 May 2007, this Court issued an order finding that Federal Insurance's denial of Ms Pankiw's claim for benefits amounted to a due process violation under 29 U.S.C. § 1133 because Federal Insurance failed to cite Ms Pankiw's son's alleged intoxication as the basis for the denial of her claim. (Docket No. 57). To remedy that violation, the Court afforded Ms Pankiw 30 days to supplement the administrative

record with evidence responding to Federal Insurance's allegation that Ms Pankiw's son was intoxicated at the time of his death. Thirty days have since passed, and the plaintiff did not supplement the administrative record or otherwise respond to Federal Insurance's claims. The Court now conducts a de novo review of Federal Insurance's denial of Ms Pankiw's claim for benefits based on the administrative record.

## I. FACTUAL BACKGROUND

On 1 November 2002, fifteen year old Alexander Pankiw was killed in an automobile collision in Westlake, Ohio. (Docket No. 56, Administrative Record (hereinafter "Record") C155). At approximately 11:50 p.m. that evening, a Westlake police officer observed Mr. Pankiw driving a reported stolen vehicle. (Record C086 - C087). Shortly thereafter, two police cars began pursuing Mr. Pankiw with the cruisers' lights and sirens in operation. (Record C087). Mr. Pankiw increased his speed during the chase, exceeding sixty miles per hour, and maneuvered the car left of the road's center divider to pass slower moving traffic. Id. Upon reentry to his original lane, Mr. Pankiw lost control of the vehicle and slammed into a utility pole, splitting the vehicle into two pieces. Id. Mr. Pankiw died upon impact. Id.

Mr. Pankiw's mother Sandra Pankiw is the plaintiff in this case. Ms Pankiw was a participant in an Accidental Death Welfare Benefit Plan ("Accidental Death Plan" or "Plan") offered by her employer PolyOne and insured by the defendant Federal Insurance. (Record C066, K02). The Accidental Death Plan is an employee benefit welfare plan governed by the Employee Retirement Income Security Act ("ERISA"). (Docket No. 29). Ms Pankiw's three children, including the decedent, were covered dependents under the Accidental Death Plan. Section I of the Plan explained the

2

coverage:

> We will pay the applicable **Benefit Amount** if an **Accident** results in a **Loss** not otherwise excluded. The **Accident** must result from a covered **Hazard** and occur while this policy is in force. The **Loss** must occur within one (1) year of the **Accident**.

(Record K006 (emphasis in original, indicating terms that have special meanings and are identified in the Definitions section of the policy)). The term "Accident" is defined in the policy as -

> ...a sudden, unforseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease or other bodily malfunction and is the direct cause of loss.

(Record K007 (emphasis omitted)). The term "Hazard" is defined as "24 [h]our [b]usiness and [p]leasure," meaning "all circumstances, subject to the terms of the policy, to which the Insured Person may be exposed anywhere in the world." (Record K018)(emphasis omitted)). The term "Loss" includes the accidental loss of life. (Record K004).

On 17 January 2003, Ms Pankiw filed a claim for benefits from Federal Insurance pursuant to the terms of the Accidental Death Plan for the death of her son. (Record C067). On 16 April 2003, Federal Insurance denied Ms Pankiw's claim, citing as its reason -

> Federal does not believe that the policy's requirements that an "accident" (a sudden, unforseen, and unexpected event happening by chance) cause the accidental bodily injury can be satisfied where Mr. Pankiw's death was the result of a collision occurring while Mr. Pankiw was driving at an excessive rate of speed in an attempt to elude police pursuing him in a stolen car.

(Record C238). Federal Insurance concluded that based on these facts, Mr. Pankiw's

3

death was the result of an intended course of action and not an "accident" as defined by the policy. Id.

Ms Pankiw appealed her claim, but the plan administrator affirmed Federal Insurance's position that no coverage was available under the Accidental Death Plan for her son's death. (Record C241 - C245). Federal Insurance again described Mr. Pankiw's death as the result of an automobile collision occurring because "Mr. Pankiw was driving at an excessive rate of speed in a stolen car in an attempt to elude police pursuing him." (Record C242).

A toxicology laboratory report prepared by the Cuyahoga County Coroner's Office shows Mr. Pankiw had a volatile ethanol level[1] of 0.09 g/dl (grams per deciliter) in his heart blood and 0.10 g/dl in his femoral blood at the time of its death. (Record C088). Federal Insurance first received a copy of the coroner's toxicology report on 15 April 2003, the day before it dated and mailed its first letter of denial to Ms Pankiw. (Record C088). Despite access to this information, neither of the denial letters sent to the plaintiff identify Mr. Pankiw's intoxication as the basis for denying her claim for benefits.

Ms Pankiw brought suit against Federal Insurance in the Cuyahoga County Court of Common Pleas on 19 October 2004, and the matter was removed to this Court on 23 November 2004. (Docket No. 1). On 7 September 2005, this Court granted the defendant's motion for partial summary judgment and dismissed the plaintiff's state law claims because such claims are precluded by ERISA. Both parties now seek a

---

[1] Volatile ethanol level is used to determine a person's blood alcohol concentration ("BAC").

judgment from this Court based on the evidence in the administrative record pursuant to Wilkins v. Baptist.

## II. STANDARD OF REVIEW

Pursuant to 29 U.S.C. § 1132(a)(1)(B), a beneficiary of an ERISA plan may bring suit in federal district court to recover benefits allegedly due under the terms of the plan. Univ. Hosps. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 845 (6th Cir. 2000). Federal courts reviewing an administrator's denial of benefits shall conduct a de novo review of the record, except in cases where the ERISA plan affords the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In the latter case, courts employ the more deferential arbitrary and capricous standard of review. Id. "[T]he summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition." Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 619 (1998).

In the case before this Court, both parties agree that the Accidental Death Plan does not afford Federal Insurance discretionary authority to determine eligibility for benefits or to construe the terms of the policy. (Docket No. 49 p. 11; Docket No. 51 p. 1). Accordingly, the Court will review de novo Federal Insurance's determination to deny Ms Pankiw's claim for benefits. The Sixth Circuit sets forth the following guideline for courts adjudicating ERISA actions under the de novo standard:

> As to the merits of the action, the district court should conduct a de novo
> review based solely upon the administrative record, and render findings
> of fact and conclusions of law accordingly. The district court may
> consider the parties' arguments concerning the proper analysis of the
> evidentiary materials contained in the administrative record, but may not

5

admit or consider any evidence not presented to the administrator. Wilkins, 150 F.3d at 619.

### III. LAW & ANALYSIS

Was the automobile collision which caused Mr. Pankiw's death an "accident" within the meaning of the Accidental Death Plan? Because the Plan is governed by ERISA, the Court applies federal common law rules of contract interpretation to answer this question. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998). "The general principles of contract law dictate that [the Court] interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense." Id. The Court gives effect to the unambiguous terms of the contract under this plain meaning analysis. Univ. Hosps. v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust, 441 F.3d 430, 437 (6th Cir. 2006).

In defining the term "accident" in an ERISA plan, the Court first turns to the language of the plan. The Accidental Death Plan defines an accident as an event that - (1) is unforeseen, (2) arises from a source external to the insured, (3) occurs independently of an illness or disease, and (4) is the direct cause of the insured's loss. The Court's analysis begins by determining whether Mr. Pankiw's collision and death were unforeseeable.

The Accidental Death Plan does not define the term "unforeseen," and the Court finds this term susceptible to more than one meaning. Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077 (1st Cir. 1990) sets forth a foreseeability framework that has

been adopted by many federal courts and used by the Sixth Circuit.[2] The <u>Wickman</u> standard is instructive, and the Court will use it to determine whether Mr.Pankiw's accident and resulting death were foreseeable.

Under <u>Wickman</u>, courts determining whether an injury, death or otherwise, is the result of an accidental event should consider both the subjective expectations of the insured, as well as the objective expectations of a reasonable person. 908 F.2d at 1088. The subjective analysis considers "the reasonable expectations of the insured when the policy was purchased ...." <u>Id.</u> If the Court determines that the record contains insufficient evidence to determine the insured's subjective expectation, then the Court should proceed to the objective analysis, questioning "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." <u>Id.</u>

There is insufficient evidence in the administrative record to determine whether this was the type of incident Ms Pankiw reasonably expected when she signed up for

---

[2] In <u>Jones v. Metropolitan Life Insurance Company</u>, the Sixth Circuit surveyed federal court interpretations of the term "accident" in ERISA cases and categorized this developing federal common law into two standards. 385 F.3d 654, 664-65 (6th Cir. 2004). Most of the cases were faced with the task of interpreting the term "accident" in ERISA plans that did not otherwise offer a definition. The first standard distinguishes between accidental means and accidental results, finding that an injury is caused by an accident when the injury is the result of an unintended and unexpected event during the course of an intentional activity. <u>Id.</u> at 664. The second standard, followed more consistently by federal courts, defers to a foreseeability standard, finding that an injury is accidental if the injury is neither subjectively expected nor objectively foreseeable. Although this Court is not faced with having to define the term accident, it does have to make a finding as to whether Mr. Pankiw's accident was foreseeable. The Court therefore uses the foreseeability standard set forth in <u>Wickman</u> and employed by the Sixth Circuit in <u>Jones</u>. It should be noted, however, that <u>Jones</u> declined to adopt either test based on its finding that the <u>Jones</u> plaintiff presented evidence passing both standards. 385 F.3d at 665.

this ERISA policy.[3] "Generally, insureds purchase accident insurance for the very purpose of obtaining protection from their own miscalculations or misjudgments." Wickman, 908 F.2d at 1088. On the facts here, a reasonable expectation analysis is merely speculative, thus we proceed to an objective analysis. See Id.

With respect to the objective component of foreseeability analysis, would a reasonable person with background and characteristics similar to Mr. Pankiw believe that death is a highly likely result of reckless or drunken driving? The Sixth Circuit has not addressed this narrow issue within the context of an ERISA case, and the federal courts which have addressed it have taken different approaches. Courts that conclude deaths are not accidental when they are the result of driving under the influence embrace the rationale that because the consequences of such behavior are so well publicized, a reasonable person would know that death is highly likely to occur or reasonably foreseeable.[4] On the other end of the spectrum, courts that conclude deaths occurring as a result of drunken driving are accidental reason that, although

---

[3] In most of the cases applying Wickman, the insured who signed the policy is also the decedent. Courts commonly apply the subjective analysis by considering the subjective expectations of the decedent at the time of the event in question, not necessarily at the time the policy was purchased. In the case before this Court, the plaintiff is the individual who purchased the policy but she is not the decedent. Adhering strictly to the Wickman analysis, this Court will consider whether this was the type of incident Ms Pankiw intended to insure against when she listed her children on her policy.

[4] See Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340 (4th Cir. 2006)(holding that the insurer did not act unreasonably by denying accidental death coverage because the injury or death was highly likely or reasonably foreseeable as result of voluntarily driving under the influence); Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104 (7th Cir. 1998) (upholding a denial of benefits since a death that occurs as a result of driving while intoxicated is not an accident because the result is reasonably foreseeable, subjectively and objectively); Walker v. Metro. Life Ins. Co., 24 F.Supp. 2d 775 (E.D. Mich. 1997) (finding that because the hazards of drunk driving are so well known, a reasonable person would know that death is a highly likely to occur as a result of such behavior).

8

risky behavior may increase the chances of dire results, such as collision, injury to oneself or others, or a drunk driving conviction, death is neither inevitable nor highly likely to occur.[5]

In the case before this Court, the objective analysis rests on whether a reasonable person with a background and characteristics similar to Mr. Pankiw would view death as highly likely to occur as a result of reckless driving, speeding on a city street in a police chase, while under the influence of alcohol. The facts set forth in the Record scarcely address Mr. Pankiw's personal background and characteristics. The Record shows, however, that Mr. Pankiw was fifteen-years of age at the time of his death, approximately two months shy of his sixteenth birthday and old enough to hold a temporary instruction permit to drive.[6] (Record C175). He was not yet licensed to drive, although the evidence in the Record demonstrates that he had some knowledge of how to operate an automobile, as he maneuvered the vehicle through city streets, made turns, and increased his speed to elude the police. (Record C086-C087). The dangers

---

[5] See King ex. rel. Schanus v. Hartford Life and Accident Ins. Co., 357 F.3d 840 (8th Cir. 2004) (concluding that a death resulting from a drunk driving collision was objectively unforeseeable) rev'd en banc on other grounds, 414 F.3d 994 (8th Cir. 2005); Lennon v. Metropolitan Life Insurance Co., 446 F.Supp.2d 745, 751 (E.D. Mich. 2006) (concluding that an insured's death resulting from an alcohol-impaired car collision was accidental; the court reasoned that drunken drivers are more likely to survive than to die, relying on a statistic that one out of every 9,128 alcohol-impaired automobile trips in 2002 resulted in a fatality); West v. Aetna Life Ins. Co., 171 F.Supp.2d 856, 904 (N.D. Iowa 2001) (holding that a death resulting from driving under the influence of alcohol was accidental; discussing whether such a death is foreseeable to a reasonable person, the court states, "What 'common knowledge' should actually tell a person driving while intoxicated is that he or she is ... far more likely to arrive home than to be either arrested, injured, or killed").

[6] In Ohio, an individual may obtain a probationary driver's license at the age of sixteen, so long as that individual has held a temporary instruction permit for at least six months. O.R.C. § 4507.071(A). Ohio issues temporary instruction permits to individuals at least fifteen years six months of age. O.R.C. § 4507.05(A).

associated with reckless and drunk driving are well-known. The public is warned continuously of these hazards through the media, schools, driver's education, and the state and municipal laws which prohibit driving under the influence and speeding. At two months shy of sixteen, an individual has had enough exposure to these forums to apprise himself or herself of the hazards of driving recklessly in a police chase while under the influence of alcohol. Based on these facts, the Court finds that a reasonable person with Mr. Pankiw's background and experience would know that driving under the influence and fleeing the police at an excessive rate of speed on city streets is likely to result in death.

In sum, the Court finds that Mr. Pankiw's collision and resulting death were foreseeable because, although there is insufficient evidence to determine whether Ms Pankiw intended to insure against this type of event or death, a reasonable person with background and experience of Mr. Pankiw would expect death to be a likely consequence of reckless and drunken driving. Accordingly, his death was not accidental within the meaning of the Accidental Death Plan, and Ms Pankiw's claim for benefits will be denied.

### III. CONCLUSION

The defendant's motion for summary judgment or in the alternative judgment pursuant to <u>Wilkins v. Baptist</u> is granted, and the plaintiff's cross motion for summary judgment or judgment pursuant to <u>Wilkins v. Baptist</u> is denied.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE

Date: 10 July 07