IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
-------------------------------------------------  :
                                                   :
SANDRA PANKIW,                                     :
                                                   :
                                Plaintiff,         : CASE NO. 1:04 CV 2334
                                                   :
                      -vs-                          : ORDER DENYING MOTION FOR
                                                   : RECONSIDERATION
FEDERAL INSURANCE COMPANY,                          :
                                                   :
                                Defendant.          :
                                                   :
-------------------------------------------------  :
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This ERISA action is now before the Court on plaintiff Sandra Pankiw's motion for

reconsideration.  (Docket No. 60).  On 15 August 2007, this Court granted Ms Pankiw's

motion in part, allowing her to supplement the administrative record for the Court's

review, but reserving judgment on the merits of the motion.  (Docket No. 63).  Ms

Pankiw timely supplemented the record (Docket No. 64), which the Court has now

reviewed.  For the reasons set forth below, the plaintiff's motion will be denied.

**A.  Factual and Procedural Background**

A previous order from this Court dated 10 July 2007 sets forth the following

factual background for this case:

> On 1 November 2002, fifteen year old Alexander Pankiw was
> killed in an automobile collision in Westlake, Ohio.  (Docket No. 56,
> Administrative Record (hereinafter "Record") C155).  At approximately
> 11:50 p.m. that evening, a Westlake police officer observed Mr. Pankiw
> driving a reported stolen vehicle.  (Record C086 - C087).  Shortly
> thereafter, two police cars began pursuing Mr. Pankiw with the cruisers'
> lights and sirens in operation.  (Record C087).  Mr. Pankiw increased his

speed during the chase, exceeding sixty miles per hour, and maneuvered the car left of the road's center divider to pass slower moving traffic.  Id.  Upon reentry to his original lane, Mr. Pankiw lost control of the vehicle and slammed into a utility pole, splitting the vehicle into two pieces.  Id.  Mr. Pankiw died upon impact.  Id.

Mr. Pankiw's mother Sandra Pankiw is the plaintiff in this case. Ms Pankiw was a participant in an Accidental Death Welfare Benefit Plan ("Accidental Death Plan" or "Plan") offered by her employer PolyOne and insured by the defendant Federal Insurance.  (Record C066, K02).  The Accidental Death Plan is an employee benefit welfare plan governed by the Employee Retirement Income Security Act ("ERISA" ).  (Docket No. 29).  Ms Pankiw's three children, including the decedent, were covered dependents under the Accidental Death Plan. Section I of the Plan explained the coverage:

> We will pay the applicable **Benefit Amount** if an **Accident** results in a Loss not otherwise excluded.  The **Accident** must result from a covered **Hazard** and occur while this policy is in force.  The **Loss** must occur within one (1) year of the **Accident.**

(Record K006 (emphasis in original, indicating terms that have special meanings and are identified in the Definitions section of the policy)).  The term "Accident" is defined in the policy as -

> ...a sudden, unforseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease or other bodily malfunction and is the direct cause of loss.

(Record K007 (emphasis omitted)).  The term "Hazard" is defined as "24 [h]our [b]usiness and [p]leasure," meaning "all circumstances, subject to the terms of the policy, to which the Insured Person may be exposed anywhere in the world."  (Record K018)(emphasis omitted)).  The term "Loss" includes the accidental loss of life.  (Record K004).

On 17 January 2003, Ms Pankiw filed a claim for benefits from Federal Insurance pursuant to the terms of the Accidental Death Plan for the death of her son.  (Record C067).  On 16 April 2003, Federal Insurance denied Ms Pankiw's claim, citing as its reason -

> Federal does not believe that the policy's requirements that an "accident" (a sudden, unforseen, and unexpected event happening by chance) cause the accidental bodily injury can be satisfied where Mr. Pankiw's death was the result of a collision occurring while Mr. Pankiw was driving at an excessive rate of speed in an attempt to elude police pursuing him in a stolen car.

(Record C238).  Federal Insurance concluded that based on these facts, Mr. Pankiw's death was the result of an intended course of action and not an "accident" as defined by the policy.  Id.

2

        Ms Pankiw appealed her claim, but the plan administrator affirmed Federal Insurance's position that no coverage was available under the Accidental Death Plan for her son's death.  (Record C241 - C245).  Federal Insurance again described Mr. Pankiw's death as the result of an automobile collision occurring because "Mr. Pankiw was driving at an excessive rate of speed in a stolen car in an attempt to elude police pursuing him."  (Record C242).

        A toxicology laboratory report prepared by the Cuyahoga County Coroner's Office shows Mr. Pankiw had a volatile ethanol level of 0.09 g/dl (grams per deciliter) in his heart blood and 0.10 g/dl in his femoral blood at the time of its death.  (Record C088).  Federal Insurance first received a copy of the coroner's toxicology report on 15 April 2003, the day before it dated and mailed its first letter of denial to Ms Pankiw. (Record C088).  Despite access to this information, neither of the denial letters sent to the plaintiff identify Mr. Pankiw's intoxication as the basis for denying her claim for benefits.

(Docket No. 58, pp. 2-4).

        Ms Pankiw filed a complaint pursuant to ERISA, challenging defendant Federal Insurance Company's ("Federal Insurance") denial of her claim for benefits.  (Docket No. 1).  Both parties motioned the Court for judgment on the administrative record pursuant to Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir. 1998). (Docket Nos. 49, 51).  This Court issued an order on 11 May 2007 (hereinafter "May 2007 Order"), finding that Federal Insurance's denial of Ms Pankiw' claim for benefits amounted to a due process violation under 29 U.S.C. § 1133 because Federal Insurance failed to cite Mr. Pankiw's alleged intoxication as the basis for it's denial, yet relied almost entirely on this allegation in its motion for judgment on the record.  (Docket No. 57).  To remedy this violation, the Court afforded Ms Pankiw 30 days to supplement the administrative record with evidence responding to Federal Insurance's allegation that her son was intoxicated at the time of his death.  Id.  Ms Pankiw did not supplement the administrative record within thirty days, and the Court conducted a de novo review

3

of the existing record.  In an order dated 10 July 2007 (hereinafter "July 2007 Order"),

the Court denied the plaintiff's claim for benefits, finding Mr. Pankiw's death was not

accidental within the meaning of the Accidental Death Plan.  (Docket No. 58).

On 25 July 2007, Ms Pankiw filed a motion for reconsideration, requesting that

the Court afford her an additional 30 days to supplement the administrative record

pursuant to the May 2007 Order and to reconsider and strike the July 2007 Order.

(Docket No. 60).  The Court granted the plaintiff's motion in part on 15 August 2007

(hereinafter "August 2007 Order") and permitted Ms Pankiw 30 days to supplement the

record regarding  to the defendant's allegation that Mr. Pankiw was intoxicated at the

time of his death.  (Docket No. 63).  The Court reserved judgment on the merits of the

motion for reconsideration until after the expiration of the 30-day period.  The plaintiff

timely filed her supplemental documents, which included affidavits from Dr. Catherine

Jackosky and Dr. Alfred Staubus, as well as an affidavit from Ms Pankiw.  (Docket No.

64).

**B.  Evidence Supplementing the Administrative Record**

Regarding the supplemental documents provided by Ms Pankiw, the Court must

first decide which of this evidence to consider in ruling on the plaintiff's motion for

reconsideration.  As explained above, the purpose of the Court's May 2007 Order was

to remedy a due process violation resulting from Federal Insurance's failure to cite Mr.

Pankiw's alleged intoxication as the basis for its denial of Ms Pankiw's claim.  The Court

specifically ruled that the plaintiff could supplement the administrative record with

evidence "responding to the defendant's assertion that Alexander Pankiw was

intoxicated at the time of his death and that such intoxication bars an award of benefits

4

under the Accidental Death Welfare Benefit Plan offered by her employer and insured by Federal Insurance." (Docket No. 57, p. 10).

The plaintiff submitted three affidavits to supplement the administrative record. The first affidavit is from Dr. Jackosky, a psychiatrist who treated Mr. Pankiw during the three years preceding his death.  Dr. Jackosky's affidavit addresses the mental health disorders for which she treated Mr. Pankiw, the symptoms and common characteristics of individuals who live with those disorders, and her expert opinion as to whether Mr. Pankiw, or an individual of similar background and characteristics, would expect death to be the consequence of drunken driving.  In paragraph 10 of her affidavit, Dr. Jackosky stated that the prescriptive treatment Mr. Pankiw was undergoing at the time of his death could enhance the effects of alcohol.  In the second affidavit, Dr. Staubus, a Emeritus faculty member in the Division of Pharmaceutics at the Ohio State University, called into question the accuracy of the toxicology tests performed by the Cuyahoga County Coroner's Office and stated that in his opinion Mr. Pankiw's blood alcohol content was below the reported level of 0.10 g/dL.  Finally, Ms Pankiw's affidavit describes both her expectations as to the type of accident her accidental death policy covered and her son's background with respect to alcohol consumption and driving experience.

Dr. Jackosky's affidavit, with the exception of paragraph 10, and Ms Pankiw's affidavit do not directly address the defendant's allegations that Mr. Pankiw was intoxicated at the time of his death and that such intoxication precludes an award of benefits.  Therefore, the affidavits exceed the scope of the Court's May 2007 Order and August 2007 Order.  Accordingly, in ruling on the merits of the plaintiff's motion for

5

reconsideration, the Court will consider only the original administrative record submitted to the Court along with Dr. Staubus' affidavit and paragraph 10 of Dr. Jackosky's affidavit.

## C. Motion for Reconsideration

The plaintiff's motion for reconsideration requests this Court to vacate its July 2007 Order granting defendant Federal Insurance's motion for judgment on the administrative record. In its August 2007 Order, the Court construed the plaintiff's motion for reconsideration as a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). The Sixth Circuit instructs that motions to amend or alter a judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in the law, or manifest injustice. GenCorp, Inc. v. American Int'l Underwriters Co., 178 F.3d 804, 834 (6th Cir. 1999). A motion to reconsider is not an opportunity to re-litigate previously decided issues, nor a platform to launch arguments that should have been raised before the judgment was rendered. Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998). This Court will reconsider its July 2007 Order in light of the supplemental evidence proffered by the plaintiff.

In the July 2007 Order, the Court employed common law rules of contract interpretation to determine whether the automobile collision which caused Mr. Pankiw's death was an accident within the meaning of the Accidental Death Plan. The Plan defined an accident as an event that was unforeseen, arose from a source external to the insured (or deceased), occurred independently of an illness or disease, and was the direct caused of the insured's loss. This Court concluded that Ms Pankiw's claim for

6

benefits failed based on the foreseeability of her son's death.

The Court started its contract analysis by interpreting the term "unforeseen," because the Accidental Death Plan did not provide such a definition.  The Court relied on the foreseeability analysis set forth in Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077 (1st Cir. 1990), a test adopted by many federal courts and employed by the Sixth Circuit.  See Jones v. Metropolitan Life Insurance Company, 385 F.3d 654, 664-65 (6th Cir. 2004).  The Wickman test employs a two-step framework, considering both the subjective and objective expectations of the insured.  The subjective analysis questions whether the insured expected that this was the type of accident he or she was insuring against when they purchased their policy.  908 F.2d at 1088.  If the Court concludes that the record contains insufficient evidence to determine the insured's subjective expectation, then Wickman directs the Court to the objective analysis to question "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct."  Id.  If the court answers this question in the negative, then the accident is unforeseeable.

In the instant case, the Court concluded that a determination of Ms Pankiw's reasonable expectations was too speculative to be reliable, so it proceeded to the objective analysis under Wickman.  Under this objective analysis, the Court reviewed and considered case law among different federal courts,[1] as the Sixth Circuit has not yet

---

[1]  See Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340 (4th Cir. 2006)(holding that the insurer did not act unreasonably by denying accidental death coverage because the injury or death was highly likely or reasonably foreseeable as result of voluntarily driving under the influence); Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104 (7th Cir. 1998) (upholding a denial of benefits since a death that occurs as a result of driving while intoxicated is not an

ruled on this narrow issue of whether a reasonable person with background and characteristics similar to the deceased would believe that death is a highly likely result of reckless or drunken driving.  Based on this review of the case law and on the evidence presented to the Court in the administrative record, the Court concluded that a reasonable person with a background and characteristics similar to Mr. Pankiw would have viewed death as highly likely to occur given the circumstances leading up to his death and his background.  In reaching this decision, the Court considered that at the time of his death Mr. Pankiw was driving recklessly and eluding the police on city streets at an excessive rate of speed while under the influence of alcohol.  The Court further weighed the facts that Mr. Pankiw was two months shy of his sixteenth birthday and old enough to hold a temporary instruction permit to drive, and that he demonstrated some knowledge in operating a car given his ability to maneuver the vehicle through city streets.  Finally, the Court recognized that the dangers of driving while under the influence of alcohol are well publicized to the general public.  Based on all of these factors, the Court determined that Mr. Pankiw's collision and resulting death were

_____

accident because the result is reasonably foreseeable, subjectively and objectively); Walker v. Metro. Life Ins. Co., 24 F.Supp. 2d 775 (E.D. Mich. 1997) (finding that because the hazards of drunk driving are so well known, a reasonable person would know that death is a highly likely to occur as a result of such behavior).

See King ex. rel. Schanus v. Hartford Life and Accident Ins. Co., 357 F.3d 840 (8th Cir. 2004) (concluding that a death resulting from a drunk driving collision was objectively unforeseeable) rev'd en banc on other grounds, 414 F.3d 994 (8th Cir. 2005);  Lennon v. Metropolitan Life Insurance Co., 446 F.Supp.2d 745, 751 (E.D. Mich. 2006) (concluding that an insured's death resulting from an alcohol-impaired car collision was accidental; the court reasoned that drunken drivers are more likely to survive than to die, relying on a statistic that one out of every 9,128 alcohol-impaired automobile trips in 2002 resulted in a fatality); West v. Aetna Life Ins. Co., 171 F.Supp.2d 856, 904 (N.D. Iowa 2001) (holding that a death resulting from driving under the influence of alcohol was accidental; discussing whether such a death is foreseeable to a reasonable person, the court states, "What 'common knowledge' should actually tell a person driving while intoxicated is that he or she is ... far more likely to arrive home than to be either arrested, injured, or killed").

8

foreseeable under the <u>Wickman</u> objective analysis and, therefore, could not be accidental within the meaning of the Accidental Death Plan.

The additional evidence with which the Court permitted Ms Pankiw to supplement the administrative record does not merit altering or amending the Court's July 2007 Order.  Ms Pankiw submitted expert opinions attesting that Mr. Pankiw was being treated with medication at the time of his death that could have enhanced the effects of alcohol,[2] and that Mr. Pankiw's actual blood alcohol content at the time of his collision may have been lower than the 0.10 g/dL level reported by the Cuyahoga County Coroner's office.[3]  This evidence fails to change the pivotal analysis in the Court's July 2007 Order - the objective inquiry into whether Mr. Pankiw's accident was foreseeable. As explained above, the determinative facts in that analysis included Mr. Pankiw's reckless driving by eluding the police on city streets at an excessive rate of speed while under the influence of alcohol; Mr. Pankiw's age and knowledge of operating a vehicle; and the well-publicized dangers of driving while under the influence of alcohol.  The supplemental evidence fails to change those facts or represent them in a different light to this Court.  The fact that Mr. Pankiw may not have been as intoxicated as reported by the coroner's office is irrelevant to the Court's decision, as Dr. Staubus' affidavit does

---

[2]  "That my treatment of Alex included prescriptive treatment of Adderall and Lexapro. Lexapro can enhance the effects of alcohol when taken in combination."  (Docket No. 64, Jackosky Affidavit ¶ 10).

[3]  "[I]t is my opinion to a reasonable degree of scientific certainty, the results of the alcohol analysis in the postmortem blood and vitreous humor samples from Alexander James Pankiw do not establish that at the time of death Mr. Pankiw's blood alcohol concentration was at or above the contemporaneous per se level of 0.10 g/dL.  It is in fact, most likely that Mr. Pankiw's blood alcohol was below the contemporaneous per se level of 0.10 g/dL."  (Docket No. 64, Staubus Affidavit, p. 2).

not refute the evidence that Mr. Pankiw was in fact under the influence of alcohol at the time of his death.  Furthermore, the fact that Mr. Pankiw may have been on medication that could have enhanced the effects of alcohol only lends support to the defendant's argument, that the influence of alcohol played a contributing factor to Mr. Pankiw's collision and resulting death.

For these reasons, the supplemental evidence fails to demonstrate that this Court's order should be altered or amended pursuant to Civil Rule 59(e).  Accordingly, the plaintiff's motion for reconsideration is denied.

IT IS SO ORDERED.

_____/s/ Lesley Wells_____
UNITED STATES DISTRICT JUDGE

Date:_ 14 Decmeber 2007 _

10